# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**US Airways, Inc.**,

       Plaintiff,

vs.

                                     **Civ No. 07-1235     MCA/LFG**

**KELLY O'DONNELL**, in her official capacity
as Superintendent of the New Mexico
Regulation and Licensing Department, and

**GARY TOMADA**, in his official capacity as
Director, New Mexico Regulation and Licensing
Department, Alcohol & gaming Division

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court upon *Plaintiff US Airways, Inc.'s Motion for Summary Judgment* [Doc. 63] and *Defendants' Motion for Summary Judgment* [Doc. 66]. The Court has considered the parties' submissions in support of and in opposition thereto, the exhibits of record and the relevant law, and is otherwise informed in the premises. Defendants' Motion for Summary Judgment [Doc. 66] is granted as to US Airways' claims of express preemption and implied (field) preemption.  Plaintiff US Airways' Motion for Summary Judgment [63] on its claims of express preemption and implied (field preemption) is denied.

-1-

## I.   BACKGROUND

Plaintiff, US Airways, Inc., is an airline providing passenger service to and from the Albuquerque International Sunport.  [Doc. 65 at 6]  US Airways serves alcoholic beverages to passengers on flights landing at and departing from the Albuquerque Sunport. These beverages are loaded into service carts in Phoenix,  Arizona.  [Doc. 65 at 31]  The loaded carts are then brought aboard US Airways aircraft, where flight attendants serve alcoholic beverages to passengers.  [Doc. 65 at 30]  The carts are not removed from US Airways planes at any time while the planes are in New Mexico. [Doc. 65 at 7]  At times, US Airways has served alcoholic beverages to passengers while planes were on the ground at the Albuquerque Sunport, prior to takeoff.  [Doc. 1, ¶ 28] US Airways served alcoholic beverages within New Mexico, either on the ground or while flying through the airspace over New Mexico, [Doc. 1, ¶¶ 28-29] without applying for and obtaining a public service liquor license as required by New Mexico law. NMSA 1978, § 60-6A-9 (1981) (providing that "[e]very person selling alcoholic beverages to travelers on trains or airplanes within the state shall secure a public service license. . . .").

In November, 2006, a US Airways passenger who departed a flight from Phoenix, Arizona, was involved in an automobile accident approximately three hours after deplaning the US Airways flight in Albuquerque.  [Doc 65. at 7] As he drove the wrong way on an interstate highway in Northern New Mexico, the US Airways passenger collided with a mini-van, killing himself and five family members traveling in the mini-van. [Doc. 65 at 7]  US Airways Flight attendants had served the passenger alcoholic

beverages during the flight to Albuquerque. [Doc. 1, ¶ 32]

The Alcohol and Gaming Division ("AGD") is a division of the New Mexico Regulation and Licensing Department ("NMRLD"). These agencies are charged with enforcing New Mexico liquor laws. Defendants Kelly O'Donnell and Gary Tomada are, respectively, the Superintendent of the NMRLD and the Director of the AGD, and are sued in their official capacities.

New Mexico law prohibits the service of alcoholic beverages to an intoxicated customer where the server knows or has reason to know that the customer is intoxicated. NMSA 1978, § 60-7A-16; 15.10.51.11 NMAC. On January 29, 2007, NMRLD cited US Airways for allegedly serving two alcoholic beverages to the passenger involved in the November 2006 automobile accident while he appeared intoxicated. [Doc. 1, ¶ 34] NMRLD also issued a Cease and Desist Order prohibiting US Airways from selling alcohol without a New Mexico liquor license on flights arriving or departing from New Mexico. [Doc. 1, ¶ 34] On March 2, 2007, US Airways submitted an application for a liquor license. [Doc. 1, ¶ 39] NMRLD issued US Airways a temporary license good for 90 days and US Airways resumed service of alcoholic beverages on flights landing at or departing from New Mexico. [Doc. 1, ¶ 41] On May 22, NMRLD cited US Airways for a second instance of allegedly serving alcohol to an intoxicated passenger. [Doc. 1, ¶ 42] On June 13, 2007, NMRLD issued a decision declining to extend US Airways' temporary license on the ground that US Airways' alcohol server training did not comply with New Mexico law.  [Doc. 1, ¶ 51]. On November 15, 2007, NMRLD issued an order

denying US Airways' application of a public service license.  US Airways did not appeal

the denial of a license.  See NMSA 1978, § 60-B2(Q) (providing that " a person

aggrieved by a decision made by the director as to the approval or disapproval of the

issuance of a license may appeal to the district court . . . .").  Instead, within the time

allowed by New Mexico law for appealing the denial of the license, see NMSA 1978, §

39-3-1.1(C)(1999), US Airways filed the present federal lawsuit seeking an injunction

restraining Defendants from enforcing New Mexico liquor laws against US Airways.

**II.     ANALYSIS**

**1.     Standard of Review**

Summary judgment under Fed.R.Civ.P. 56© "shall be rendered forthwith if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that

the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56©.  "When

a motion for summary judgment is made and supported as provided in this rule, an

adverse party may not rest upon the mere allegations or denials of the adverse party's

pleading. . . ."  Fed.R.Civ.P. 56(e).  Rather, "the adverse party's response . . . must set

forth specific facts showing that there is a genuine issue for trial."  *Id.*  Judgment is

appropriate "as a matter of law" if the nonmoving party has failed to make an adequate

showing on an essential element of its case, as to which it has the burden of proof at trial.

*See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Lopez v. LeMaster*, 172 F.3d

756, 759 (10th Cir. 1999).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial). *See Celotex*, 477 U.S. at 324. It is not the court's role, however, to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment. Rather, the Court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor. *See Hunt v. Cromartie*, 526 U.S. 541, 551-52 (1999).

### 2.    Preemption

The Article VI, Cl. 2 of the United States Constitution, the Supremacy Clause, prevents the enforcement of state regulations under some circumstances:

> first, when Congress, in enacting a federal statute, has expressed a clear intent to pre-empt state law; second, when it is clear, despite the absence of explicit preemptive language, that Congress has intended, by legislating comprehensively, to occupy an entire field of regulation and has thereby left no room for the States to supplement federal law and, finally, when compliance with both state and federal law is impossible or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 699 (1984) (internal quotation marks and citations omitted). Inquiry into a statute's preemptive effect is "guided by the rule that "[t]he purpose of Congress is the ultimate touchstone in every pre-emption case." *Altria Group, Inc. v. Good*, 129 S.Ct. 538, 543 (2009) (alteration in original) (internal

quotation marks and citation omitted).

<h4 style="text-align:center">a.     Express Preemption and Airline Deregulation Act of 1978</h4>

We first examine the plain language of the statute in question as it is "the best evidence of Congress' pre-emptive intent." *Sprietsma v. Mercury Marine*, 537 U.S. 51, 62-63 (2002). "[W]hen the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily accept the reading that disfavors pre-emption." *Altria Group, Inc.*, 129 S.Ct. at 543. The principal question presented by this case is whether § 105(a)(1) of the Airline Deregulation Act of 1978 (ADA), as amended and codified at 49 U.S.C. § 41713(b)(1), precludes New Mexico from regulating the sale and consumption of alcoholic beverages on passenger flights landing at or flying from airfields in New Mexico. Section 41713(b)(1) provides as follows: "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, *or service* of an air carrier that may provide air transportation under [Title 49, Subpart II]." (emphasis added). The Supreme Court of the United States has previously considered the preemptive effect of this statute and has concluded "(1) that [s]tate enforcement actions having a connection with, or reference to carrier rates, routes, or services' are pre-empted; (2) that such pre-emption may occur even if a state law's effect on rates, routes or services is only indirect, (3) that, in respect to pre-emption, it makes no difference whether a state law is consistent or inconsistent with federal regulation; and (4) that pre-emption occurs at least where state laws have a significant impact related to Congress' deregulatory and pre-emption-related objectives." *Rowe v. New Hampshire*

*Motor Transport Ass'n*, 128 S.Ct. 989, 995 (2009) (alteration in original) (internal

quotation marks and citations omitted).

US Airways asserts that "[t]he service of alcohol onboard a federally-licensed

aircraft is precisely the type of *service* that Congress intended to immunize from state

regulation when it passed the ADA." [Doc. 65 at 15]  Defendants contend that the sale of

alcoholic beverages to airline passengers is not a "service" within the meaning of §

41713(b)(1) and that even if state regulation of the service of alcoholic beverages on US

Airways flights departing and landing in New Mexico would otherwise be preempted by

§ 41713(b)(1), application of § 41713(b)(1) to preempt New Mexico liquor laws is

precluded by Section 2 of the Twenty-first Amendment to the United States Constitution.

There is a split of authority as to whether the provision of beverages to passengers

is a "service" within the meaning of § 41713(b)(1).  The first federal circuit  to declare

that the provision of food and beverages is among the activities that constitute "service"

for purposes of § 41713(B)(1) was the Fifth Circuit in *Hodges v. Delta Airlines*, 44 F.3d

334 (5th Cir. 1995).  According to *Hodges*,

> "Services" generally represent a bargained-for or anticipated provision of
> labor from one party to another.  If the element of bargain or agreement is
> incorporated in our understanding of services, it leads to a concern with the
> contractual arrangement between the airline and the user of the service.
> Elements of the air carrier service bargain include items such as ticketing,
> boarding procedures, provision of food and drink, and baggage handling, in
> addition to the transportation itself.  These matters are all appurtenant and
> necessarily included with the contract of carriage between the passenger or
> shipper and the airline. It is these [contractual] features of air transportation
> that we believe Congress intended to de-regulate as "services" and broadly
> to protect from state regulation.

44 F.3d at 336.  Three other federal circuit courts, those of the Second, Seventh and

Eleventh Circuits, have adopted a definition of services that includes the provision of

beverages as a "service" for purposes of § 41713(b)(1).  *See Air Transport Ass'n of*

*America, Inc. v. Cuomo*, 520 F.3d 218 (2d Cir. 2008) (holding that the provision of food,

water, electricity, and restrooms to passengers during lengthy ground delays falls within

service of an air carrier); *Branche v. Airtran Airways, Inc.*, 342 F.3d1248 (11th Cir.

2003) (adopting *Hodges*' definition of services; holding that former airline employee's

retaliatory discharge claim under Florida Whistleblower Act was not preempted by

ADA); *Travel All Over the World, Inc. v. Kingdom of  Saudi Arabia*, 73 F.3d 1423, 1433

(7th Cir. 1996) (adopting *Hodges*' definition of services as "a bargained-for or

anticipated provision of labor from one party to another," including food and drink;

concluding that false statements by airline regarding travel agency not related to rates,

routes, or services).

      In contrast to the Second, Fifth, Seventh and Eleventh Circuits, the Ninth Circuit

has held that an airline's provision of in-flight beverages is not "service" for purposes of

§ 41713(b)(1).  *See Chagas v. Trans World Airlines, Inc.*, 160 F.3d 1259 (9th Cir. 1998)

(observing that "'service' was not intended to include an airline's provision of in-flight

beverages, personal assistance to passengers, the handling of luggage, and similar

amenities").  The Ninth Circuit Court Appeals emphasized that "service" must be read in

its statutory context:

Airlines' "rates" and "routes" generally refer to the point-to-point transport of passengers.  "Rates" indicates price; "routes" refers to courses of travel. It therefore follows that "service," when juxtaposed to "rates" and "routes," refers to such things as the frequency and scheduling of transportation, and to the selection of markets to or from which transportation is provided (as in, "this airline provides service from Tucson to New York twice a day.")

160 F.3d at 1255-56.

Our Tenth Circuit has not expressly decided the question, although it has cited *Hodges* as additional support in holding that a local airport authority's ban on scheduled passenger flights was preempted by § 41713(b)(1).  *Arapaho County. Pub. Airport Auth. v. FAA*, 242 F.3d 1213(10th Cir. 2001).  The holding in *Arapaho County* that "scheduled passenger service" is a "service" for purposes of § 41713(b)(1) did not require the Court to decide whether the provision of in-flight beverages is a service within the meaning of § 41713(b)(1).  In the absence of a consistent and authoritative definition for "service," the Court turns to the structure and purpose of the ADA for guidance.  *See Altria Group, Inc.*, 129 S.Ct. at 543 ("If a federal law contains an express pre-emption clause, it does not immediately end the inquiry because the question of the substance and scope of Congress' displacement of state law still remains.").

The parties have not provided the Court, nor has the Court identified, any authority indicating that eliminating federal or state health or safety oversight of alcohol as an in-flight amenity was a concern of Congress in enacting the ADA.  Rather, Congress appears to have been motivated by larger economic concerns such as eliminating regulatory price-fixing and governmentally-imposed barriers to the entry of

new carriers.  [Doc. 64-2 at 8];  Robert M. Hardaway, *Of Cabbages and Cabotage:  the Case for Opening up the U.S. Airline Industry to International Competition*, 34 Transp. L.J. 1, 7-9 (2007).  If the preemption provision is to be effective, the terms "price, route, and service" set out in § 41713(b)(1) collectively should capture the major areas of economic decision-making that Congress sought to relegate to market forces and to insulate from governmental control.  *See* Hardaway, *supra*, at 5 (referring to deregulation as "the freedom to charge market fares and choose the most efficient routes and schedules").  Because the term "prices" and "routes" appear not to capture a key aspect of the business of air transportation—*when* transportation over a route is to be provided—the term "service" must be read to capture the temporal component of air transportation—i.e., frequency and scheduling of flights.  The Court agrees with the Ninth Circuit Court of Appeals that "service" refers to such things as the frequency and scheduling of transportation. When "service" is read in the foregoing sense, the three terms, "price, route, and service" collectively capture the major areas of economic decision-making that Congress sought to deregulate.

The Court's adoption of the Ninth Circuit's definition does not mean that food and beverage service and other non-essential in-flight amenities are left without protection from unduly burdensome state regulation.  Express statutory preemption is merely one type of preemption.  *See generally Capital Cities Cable, Inc.*, 467 U.S. at 698-99 (listing preemption doctrines).  In the absence of express statutory preemption, state regulation of in-flight amenities still would be subject to review under other preemption doctrines.  *See*

-10-

*Geier v. Amer. Honda Motor Co.*, 529 U.S. 861, 869, 872 (2000) (citing *Freightliner Corp. v. Myrick*, 514 U.S. 280 (1995)).  In addition, due process may impose limitations on state regulatory jurisdiction.  *Home Ins. Co. v. Dick*, 281 U.S. 397, 407-08 (1930) (observing that Texas was without power to apply Texas law to insurance contract where contract was made outside of Texas and all things in regard to performance of the contract were to be done outside of Texas);  *Gerling Global Reinsurance Corp of Amer. v. Gallagher*, 267 F.3d 1228, 1235-40 (11ᵗʰ Cir. 2001) (discussing and applying due process limitations on state legislative jurisdiction;  invalidating provisions of Florida's Holocaust Victims Insurance Act as applied to German insurers).

Further, it is well established that "where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress."  *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988).  Courts do not lightly assume that "Congress intended to infringe constitutionally protected liberties or usurp power constitutionally forbidden it."  *Id.*  As will be explained below, if the Court were to construe "service" to encompass the in-flight sale of alcoholic beverages, thus rendering the New Mexico liquor laws unenforceable, § 41713(b)(1) would violate § 2 of the Twenty-first Amendment to the United States Constitution.

Section 2 of the Twenty-first Amendment states that "[t]he transportation or importation into any State . . . for delivery or use therein of intoxicating liquors, in

violation of the laws thereof, is hereby prohibited." Although limited in some circumstances by other provisions of the constitution, "[t]he Twenty-first Amendment grants the States virtually complete control over whether to permit importation or sale of liquor and how to structure the liquor distribution system." *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 110 (1980) (*Midcal*). In applying the Twenty-first Amendment, the Court considers whether "the interests implicated by a state regulation are so closely related to the powers reserved by the Twenty-first Amendment that the regulation may prevail," even in the face of a direct conflict with federal law. *Captial Cities Cable, Inc.*, 467 U.S. at 714.

US Airways contends that the New Mexico liquor laws are not closely related to the protections of the Twenty-first Amendment because the airline does not transport or import alcohol into New Mexico for delivery or use therein. [Doc 65 at 31] Because the alcohol is loaded onto airplanes in Arizona, served only in flight, and cannot be removed from the airplane, US Airways maintains that the "service of alcohol occurs within the federal enclave of the 'exclusive federal sovereignty of airspace of the United States' . . . and only within this federal enclave." [Doc 65 at 32 *quoting* 49 U.S.C. § 40103(a)(1).]

It is certainly correct that a state "has no authority to regulate in an area or over a transaction that fell outside of its jurisdiction." *North Dakota v. United States*, 495 U.S. 423, 431 (1990). Substantially similar language, however, in the predecessor statute to § 40103(a)(1), "did not expressly exclude the sovereign powers of the states." *Braniff Airways v. Nebraska State Bd. of Equalization and Assessment*, 347 U.S. 590, 595

(1954).  Similarly, the Tenth Circuit Court of Appeals reviewed the legislative history of the predecessor statute and concluded that the federal statute demonstrates an "intent to keep the United States free from military planes from foreign nations, and not domestic safety concerns."  *Cleveland v. Piper Aircraft Corp.*, 985 F.2d 1438, 1444 (10th Cir. 1993).  Thus, it § 40103(a)(1) does not grant the federal government exclusive subject matter jurisdiction over the nation's airspace.  Where the state shares concurrent jurisdiction with the federal government, "the State has virtually complete control over the importation and sale of liquor and the structure of the liquor distribution system." *North Dakota*, 495 U.S. at 429, 431.  In particular, states "have the power to control shipments of liquor during their passage through their territory and to take appropriate steps to prevent the unlawful diversion of liquor into their regulated intrastate markets." *Id.* at 432.

In the present case, New Mexico has the authority to control US Airways' distribution of alcohol in airplanes that are in New Mexico airspace for two reasons.  First, New Mexico has concurrent jurisdiction with the federal government over events occurring in its airspace.  *See Braniff*, 347 U.S. at 595; *Cleveland*, 985 F.2d at 1444. Thus, the in-flight service of alcohol is "[t]he transportation or importation into any State . . . for delivery or use therein of intoxicating liquors."  U.S. Const. Amend. XXII, § 2. Second, even lacking concurrent jurisdiction, New Mexico has the authority to regulate liquor moving through its territory and may take "appropriate steps to prevent the unlawful diversion" of the alcohol into its regulated market.  *See North Dakota*, 495 U.S.

-13-

at 431-32.  US Airways cites *Collins v. Yosemite Park & Curry Co.*, 304 U.S. 518 (1938)

for the proposition a state cannot require a license in order to transport alcohol into an

exclusively federal enclave.  [Doc 65 at 32]  The Supreme Court, however, later

explained that the decision in *Collins* "might have been otherwise if California had

sought to regulate or control the transportation of the liquor there involved from the time

of its entry into the State until its delivery at the national park, in the interest of

preventing unlawful diversion into her territory."  *North Dakota*, 495 U.S. at 431-32

(internal quotation marks and citation omitted).  Accordingly, this Court is satisfied that

US Airways' activity is encompassed by the strictures of the Twenty-first Amendment.

    The application of preemption and § 2 of the Twenty-first Amendment has been

addressed in the context of alcohol service on passenger trains.  *See Nat'l R.R. Passenger

Corp. v. Miller*, 358 F. Supp. 1321 (D. Kan. 1973), *aff'd* 414 U.S. 948 (1973) (*Miller*).

In 1970, Congress enacted the Rail Passenger Service Act of 1970, 45 U.S.C. §§ 501, *et

seq*. ("RPSA"), which created the entity known as Amtrak. The RPSA included the

following provision: "[Amtrak] shall not be subject to any State or other law pertaining to

the transportation of passengers by railroad *as it relates to rates, routes, or service*." 45

U.S. 546© (emphasis added).

    During July 1972, Kansas law enforcement officials began enforcing Kansas

liquor laws on Amtrak trains that stopped in Kansas.  Several Amtrak employees were

arrested and charged with criminal violations of Kansas liquor laws.  In response, Amtrak

filed a suit in federal district court seeking an injunction against the enforcement of

Kansas liquor laws on Amtrak trains.  *Miller*, 358 F. Supp. at 1323.  Amtrak argued that Kansas liquor laws were preempted by § 546©, in that "the providing of liquor for passengers is a 'service' to be afforded the people riding trains and that the federal statute preempts the state's right to regulate possession, use, or sale of liquor on trains operating under provision of the Congressional Act."  *Id.* at 1328.

The *Miller* court's legal analysis began with a detailed discussion of § 2 of the Twenty-first Amendment.  *Id.* at 1327.  The court rejected Amtrak's preemption argument based on the balance between state and federal power struck by § 2 of the Twenty-first Amendment.

> [B]efore a federal law may preempt state legislation, the federal statute must be free from constitutional infirmity.  Constitutional amendments limit the power of Congress as well as that of the states when so considered.  A construction of 45 U.S.C. § 546© which would forbid or prevent the enforcement of a state's regulatory law under the guise of classifying the use and sale of liquor-by-the-drink as a "service," if so construed, would amount to a circumvention of the clear provisions of the second section of the Twenty-First Amendment.  There is nothing in the legislative history of the amendment, nor in the enactment of the Rail Passenger Service Act, to justify such interpretation and such an effort, had it been attempted, would be a clear violation of the twenty-First Amendment.  A statute will not be given a broad construction if its validity can be saved by a narrower one.  So here, *the word "services" should not be construed to include the serving of intoxicating liquor within the boundaries of a state in violation of the state's regulatory act.*  Otherwise, that part of the Congressional Act would be unconstitutional.

358 F. Supp.1329 (citation omitted; emphasis added).  The court denied Amtrak's request for an injunction and dismissed the action. *Id.* at 1331. Amtrak appealed, and the Supreme Court affirmed without opinion.

Shortly after *Miller* was decided, the Tenth Circuit Court of Appeals considered an identical challenge by Amtrak, this time to Oklahoma law, in *National Railroad Passenger Corporation v. Harris*, 490 F.2d 572 (10th Cir. 1974).  The Court of Appeals summarily rejected Amtrak's preemption argument, observing that the issue had been raised and decided adversely to Amtrak in *Miller. Id.* at 573.  Thus, as of 1978, when Congress enacted the ADA, the term "service" in the phrase "rates, routes, or service" twice had been judicially construed to exclude sales of alcoholic beverages to Amtrak passengers.

US Airways contends that *Miller* has been rendered "legally obsolete" by subsequent Supreme Court decisions.  [Doc 77 at ]  While the Supreme Court no longer adheres to the premise stated in *Miller* that "[u]nder the Twenty-First Amendment, a state has the right to legislate concerning intoxicants brought from without the State for use and sale therein, unfettered by the commerce clause," 358 F.Supp. at 1327; *see Healy v. Beer Inst., Inc.*, 491 U.S. 324, 342-43 (1989), the case before the Court does not implicate the Commerce Clause.  *Miller* continues to stand for two important points.  First, the phrase "rates, routes, or service" has been construed to exclude the sale of alcoholic beverages to passengers.  The Supreme Court of the United States has explained that "when judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its judicial interpretations as well."  *Rowe*, 128 S.Ct. at 994 (internal quotation marks and citation omitted).  Thus, the exclusionary

definition in *Miller* and *Harris* applies in the context of the ADA as well as the RPSA.

Second, "a state may protect her people from the evils incident to intoxicants and may

exercise large discretion as to the means employed." *Miller*, 358 F.Supp. at 1326.

US Airways also argues that the New Mexico liquor regulation scheme is not a

valid exercise of state power. [Doc 65 at 33-34] Specifically, US Airways argues that

"[t]he Supreme Court has made clear that 'state laws that violate other provisions of the

Constitution are not saved by the Twenty-first Amendment.'" [Doc 65 at 34 *quoting*

*Granholm v. Heald*, 544 U.S. 460, 486 (2005).] In that vein, US Airways urges this court

to "balance the State's asserted interests in regulating the service of alcohol onboard

federally-licensed aircraft against the clear federal interest, as expressed in the Federal

Aviation Act and the ADA, of maintaining exclusive federal control over the national

aviation industry." [Doc 65 at34]

This is indeed the analysis dictated by those situations in which the Twenty-first

Amendment conflicts with another constitutional provision or in which the Twenty-first

Amendment is not directly implicated. *See Midcal*, 445 U.S. at 110 ("The Twenty-first

Amendment grants the States virtually complete control over whether to permit

importation or sale of liquor and how to structure the liquor distribution system.

Although States retain substantial discretion to establish other liquor regulations, those

controls may be subject to the federal commerce power in appropriate situations. The

competing state and federal interests can be reconciled only after careful scrutiny of those

concerns in a concrete case." (internal quotation marks and citation omitted)); *Captial*

*Cities, Inc.*, 467 U.S. at 716 ("[W]hen, as here, a state regulation squarely conflicts with

the accomplishment and execution of the full purposes of federal law, and the State's

central power under the Twenty-first Amendment of regulating the times, places, and

manner under which liquor may be imported and sold is not directly implicated, the

balance between state and federal power tips decisively in favor of the federal law, and

enforcement of the state statute is barred by the Supremacy Clause.").  As explained

earlier, the Twenty-first Amendment is directly implicated by US Airways' conduct.  In

addition, US Airways fails to identify any other provisions of the constitution that are

violated by the New Mexico liquor laws.  Instead, US Airways simply cite cases holding

that the state regulation of alcohol must comport with the Equal Protection Clause, as

well as the Commerce Clause, [Doc 65 at 34] and makes no argument and presents no

evidence that the New Mexico laws in question violate these constitutional provisions.

Insofar as the Court is directed by *Rowe* to consider whether the state law has a

"significant impact related to Congress' deregulatory and pre-emption-related

objectives," 128 S.Ct. at 995 (internal quotation marks and citation omitted), US Airways

has not demonstrated that the New Mexico alcohol licensing requirements would have an

adverse affect on competition and airfare.  *See id.* at 996 ("[F]ederal law does not

pre-empt state laws that affect rates, routes, or services in too tenuous, remote, or

peripheral a manner." (internal quotation marks and citation omitted).  US Airways'

contentions in this regard are speculative and disregard the existing forms of

administrative and judicial relief available under New Mexico law, which will

substantially reduce the burden of compliance with the NMLCA.

Accordingly, this Court concludes that Congress did not intend for § 41713(b)(1) to expressly preempt New Mexico's authority to regulate the in-flight service of alcohol because (1) "service" refers not to alcohol service but to the frequency and scheduling of air transportation and (2) contrary construction of the federal statute would require this Court to determine § 41713(b)(1) violates the Twenty-first Amendment.

### b.     Implied Preemption

Despite this conclusion that § 41713(b)(1) does not expressly preempt the New Mexico liquor laws as applied to the airlines, "[p]re-emptive intent may also be inferred if the scope of the statute indicates that Congress intended federal law to occupy the legislative field, or if there is an actual conflict between state and federal law." *Altria Group, Inc.*, 129 S.Ct. at 543. Just as with express preemption, when addressing questions of implied preemption, the Court's analysis incorporates the "assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* (alteration in original) (internal quotation marks and citation omitted). Further, "each case turns on the peculiarities and special features of the federal regulatory scheme in question." *City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 638 (1973). Because US Airways makes no claim regarding conflict preemption, the Court limits its analysis to field preemption.

US Airways argues the NMLCA is preempted because the "scheme of federal

regulation [is] so pervasive as to make reasonable the inference that Congress left no

room for the States to supplement it." [Doc. 65 at 22 (quoting *Rice v. Santa Fe Elevator*

*Corp.*, 331 U.S. 218, 230 (1947).] As the basis for this argument, US Airways

specifically contends that state regulation of sales of alcoholic beverages on its aircraft is

preempted by the Federal Aviation Act, 49 U.S.C. §§ 40101, *et seq.* (FAA), and it's

implementing regulations regarding the subject of airline safety. [Doc. 65 at 22-27] The

service of alcohol, US Airways argues, is a question of airline safety because "[a]

passenger who is intoxicated or who is over served could pose a serious safety hazard in

this environment, such as causing a disruption that threatens the crew or other passengers,

impeding evacuation of the aircraft in the event of an emergency, or distracting a flight

attendant from performing his many other safety-related duties." [Doc 65 at 24] Thus,

US Airways frames the inquiry as whether the FAA occupies the legislative field of

airline safety to the extent that the states may not enforce their individual liquor licensing

laws.

      Turning to the FAA, Congress gave the following directive to the Federal

Aviation Administration:

      The Administrator of the Federal Aviation Administration shall promote
      safe flight of civil aircraft in air commerce by prescribing—

          (1) minimum standards required in the interest of safety for
      appliances and for the design, material, construction, quality of work, and
      performance of aircraft, aircraft engines, and propellers;

          (2) regulations and minimum standards in the interest of safety for—

> (A) inspecting, servicing, and overhauling aircraft, aircraft engines, propellers, and appliances;
>
> (B) equipment and facilities for, and the timing and manner of, the inspecting, servicing, and overhauling; and
>
> (C) a qualified private person, instead of an officer or employee of the Administration, to examine and report on the inspecting, servicing, and overhauling;
>
> (3) regulations required in the interest of safety for the reserve supply of aircraft, aircraft engines, propellers, appliances, and aircraft fuel and oil, including the reserve supply of fuel and oil carried in flight;
>
> (4) regulations in the interest of safety for the maximum hours or periods of service of airmen and other employees of air carriers; and
>
> (5) regulations and minimum standards for other practices, methods, and procedure the Administrator finds necessary for safety in air commerce and national security.

49 U.S.C. § 44701(g)(a).  While the authority to regulate airline safety permeates this statute, § 44701(g)(a) does not indicate an intent to regulate the in-flight service of alcohol.  US Airways points to the catch-all provision in § 44701(g)(a)(5), which permits other regulations that "the Administrator finds necessary," [Doc 65 at 23] but as the Court has noted, "when the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily accept the reading that disfavors pre-emption." *Altria Group, Inc.*, 129 S.Ct. at 543.  Examination of the other sections of the regulation reveals that Congress was addressing the need for exclusive and complete rules for the physical and mechanical operation of aircraft.  *See* § 44701(g)(a)(1) (addressing the safety of appliances and design); § 44701(g)(a)(2) (addressing the inspection of aircraft); §

44701(g)(a)(3) (addressing the "reserve supply" of equipment and fuel);  §

44701(g)(a)(4) (addressing the maximum period of work for aircraft crew).

 US Airways also cites to a specific federal airline regulation, 14 C.F.R. § 121.575,

which restricts the service of alcohol on federally licensed aircraft.  Relying on this

regulation, US Airways argues that the service of alcohol is an airline safety concern akin

to the regulation of evacuation procedures, the carriage of oxygen, and exit row seating

requirements.  [Doc 65 at 24]  Instead, § 121.575 demonstrates only an incidental federal

interest in the regulation of alcohol on airplanes.  *See Piper Aircraft Corp*. 985 F. 2d at

1445 ("In determining congressional intent on preemption questions, we look for 'clear

and manifest' indicators. (*quoting English v. general Elec. Co.*, 496 U.S. 72, 79 (1990));

*cf. City of Burbank*, 411 U.S. at 628-33 (citing numerous sections of the Noise Control

Act, the FAA, and the Environmental Protection Act as support for the Court's holding

that "the pervasive nature of the scheme of federal regulation of aircraft noise that leads

us to conclude that there is pre-emption").  This single regulation stands in contrast to

New Mexico's extensive regulation of the service of alcohol.  *See* § 60-6A-1 to -26;

NMSA 1978, §§ 60-6B-1 to -19 (2007); NMSA 1978, §§ 60-6C-1 to -9 (1999); NMSA

1978, §§ 60-6E-1 to -12 (1999); NMSA 1978, §§ 60-7B-1 to 13 (2004);  NMAC 15.10.2

to .70; NMAC 15.11.2 to .31.

 It has been made clear that the FAA "requires a delicate balance between safety

and efficiency and the protection of persons on the ground" and that "a uniform and

exclusive system of federal regulation [is required] if the congressional objectives

underlying the Federal Aviation Act are to be fulfilled." *City of Burbank*, 411 U.S. at 638-39 (internal citations omitted).  Nevertheless, the "Twenty-first Amendment grants the States virtually complete control over whether to permit importation or sale of liquor and how to structure the liquor distribution system." *Granholm*, 544 U.S. at 488 (*quoting Midcal*, 445 U.S. at 110 (1980)).  Accordingly, in the absence of any statutory basis demonstrating that the Congress intended for the FAA to regulate the service of alcohol[1], this Court concludes that the FAA does not preempt the field of midair alcohol service.

## II.    CONCLUSION

Based on the foregoing analysis, the Court concludes that the NMLCA is not preempted by the ADA or the FAA.

**IT IS THEREFORE HEREBY ORDERED** that Defendants' *Motion for Summary Judgment* [Doc. 66] on US Airways claims of express preemption and implied (field) preemption **is GRANTED** and that US Airways' *Motion for Summary Judgment* [63] on its claims of express preemption and implied (field) preemption is **DENIED**.

---

[1]      The Court observes that although US Airways provided the affidavit of an expert to establish that alcohol service is a matter of airline safety, [Doc 64-10 at 4-5] whether Congress intended for the federal regulatory scheme to encompass in-flight alcohol service is a question of statutory interpretation, which this Court decides as a matter of law.  *See Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1271 (10th Cir. 2000).

**SO ORDERED THIS** 30th day of September, 2009.

_____

M. CHRISTINA ARMIJO
UNITED STATES DISTRICT JUDGE